## Scarlata v. American Bowling Club, Inc.

*D. J. Maxwell*, for plaintiff.

*C. J. Corcoran*, for defendant.

LEWIS, J., May 27, 1949.—The bill herein was filed by plaintiff tenant against his landlord, and contains averments that on November 29, 1946, the parties entered into a written agreement of lease covering the second floor of premises 1736-1748 North Broad Street in Philadelphia, to be used for the operation of bowling alleys, a game room and billiard room, the lease running for a period of eight years, beginning December 1, 1946, at an annual rental of $9,000; that the premises had been theretofore used for a like purpose; that defendant, "in order to procure the plaintiff to enter into the said lease agreement, made express representations that the furnaces and heating plant within the demised premises were in good working order, functioning properly and would provide adequate heat, for the plaintiff's business . . . thus inducing the plaintiff to enter into the said lease agreement and specifically to agree to the covenants pro-

vided in Paragraph 35 of the lease", which are set forth.

The bill further recites that "said representations" made by defendant through its agents were in fact false and were made fraudulently with wilful intent to deceive plaintiff and induce him to enter into the lease agreement; that at the time there were "dangerous, hidden and latent defects in the said furnaces and in the heating system", which defects were known to the defendant through its agent but were not known to or reasonably discoverable on inspection by plaintiff. The alleged latent defects are set forth in the bill as including the following:

Two sections of the boilers were completely missing;

No. 4 section of boiler no. 1 was cracked and had been blanked off for a period of years;

No. 7 and no. 10 sections of boiler no. 1 were cracked;

The safety valve on boiler no. 1 would not operate automatically under pressure;

Boiler no. 1 was full of accumulated residue on the inside which cut into its capacity;

The entire heating plant was inadequate to supply sufficient heat in that there was insufficient radiation; various radiators were cracked or were operating inadequately, etc.

There are certain other minor defects recited.

It is further averred that as a result of the defective conditions in the furnace and heating system and the existence of foreign matter in coal that the landlord supplied under provisions of the lease, there had been a continuous failure of the heating system, causing an expense to plaintiff for temporary repairs and supplemental devices of $2,400, and occasioning plaintiff losses in income from the operation of his business in the amount of $45,000.

The bill states that plaintiff has been advised by reputable heating engineers that the existing heating system cannot be economically repaired, and that an entirely new heating system is required, the cost of which will be substantial; that plaintiff has been advised that defendant intends to commence legal proceedings against him under the lease agreement. He prays that the lease be reformed by the chancellor by a finding that the provisions of paragraph 35 are void because of fraudulent misrepresentation that induced plaintiff to execute the lease; that defendant be enjoined from proceeding against plaintiff at law or otherwise under the lease agreement, and defendant be required to install a new and adequate heating system.

To this bill defendant interposed preliminary objections to the effect that the averments in the bill are legally insufficient to support the conclusion of fraud on the part of defendant, and plaintiff has a full, adequate and complete remedy at law.

An informal argument in chambers was had upon the exceptions, and briefs were supplied us. Paragraph 35 is one of many typewritten paragraphs interpolated in the otherwise printed lease, and each page of the typewritten insert bears the initials of the respective parties.

We have concluded that the preliminary objections must be sustained. Paragraph 35 referred to reads as follows:

"35. Lessees agree to employ a competent janitor to take charge of and tend the furnaces located in the building of which the herein demised premises are a part, and lessees further agree to maintain the said furnaces in as good order and repair as they now are, at lessees' own cost and expense. Lessees agree that the said furnaces are now in good working order and are functioning properly and further agree to in-

demnify the lessor and to save it harmless from any loss which may be occasioned by lessees' failure to employ a competent janitor for the aforesaid purposes or to maintain the said furnaces in good working order."

It will be observed that plaintiff thus agreed specifically that the furnaces supplying the heat to the demised premises were, on the date of the execution of the lease, in good working order and were functioning properly, and further agreed to save the lessor harmless from any loss which might be occasioned by the lessees' failure to maintain the said furnaces in good working order. Having so covenanted, the lessee cannot now be heard to deny the good condition of the furnaces as of the beginning of the lease, or their proper functioning. By the covenant the lessee took upon himself all responsibility for the then condition of the furnaces and their subsequent functioning.

In the light of the provisions of the written lease under seal, there is no possible basis for the bill in equity. Evidence cannot be received of prior parol representations contradicting provisions clearly written in the lease which cover the same subject matter as the alleged representations.

Furthermore, the lessee cannot be permitted to say he relied upon any such parol representations of the landlord. We must assume the lessee knew what he was doing in making the lease and that he was not without opportunity to make any inspection of the heating system that was necessary to satisfy himself as to its condition. If he chose to assume all the risk of that condition without adequate inspection, it was his own venture. Nothing is contained in the bill that would justify the chancellor in rewriting the contract of the parties.

If there has been a partial failure of consideration, due to the defective quality of the coal supplied by

the landlord under the lease, the lessee has his remedy at law in defending demands for rent accruing from time to time.

The preliminary objections are sustained, and plaintiff is required to amend his bill to show a cause of action within 15 days, under penalty of having the bill dismissed or referred to the law side of the court.